# IN RE PETITION OF ANDY DREOSCH AND OTHERS FOR ESTABLISHMENT OF COUNTY DITCH NO. 78. PARK S. MALVIN AND ANOTHER v. COUNTY OF BLUE EARTH.[1]

February 16, 1951.

No. 35,284.

*Smith, McLean & Peterson* and *Carl W. Peterson,* County Attorney, for appellant.

*C. A. (Gus) Johnson* and *Gallagher, Farrish & Sheran,* for respondents.

KNUTSON, JUSTICE.

Appeal from a judgment entered upon a jury verdict in an action involving an appeal from an order of the county board of Blue Earth county fixing benefits and assessing damages in a county ditch proceeding.

[1]Reported in 46 N. W. (2d) 464.

The facts are not in dispute. Respondents here, Park S. Malvin and Vilma M. Malvin, his wife, own and reside on a 240-acre farm in Vernon Center township, Blue Earth county. The farm consists of the SE¼ of section 10 and the W½ of NW¼ of section 15. The entire farm has been operated as a unit for many years. The buildings are located on the southeast end of the 80-acre tract. The farm is fenced and cross-fenced and has been operated as a stock and grain farm. Quite a substantial amount of stock is kept on the farm. The crops and pasture are rotated from year to year, there being no permanent pasture. The undisputed and only evidence of value of the farm is that of the owners that it is worth $200 per acre.

A graveled road runs along the south line of the farm and also along the west line. At a point somewhat north of the section line between the north quarter and the south eighty, a bridge crosses the road over a natural watercourse or prairie swale which runs generally in an easterly direction in a meandering course back and forth across the section line until it reaches substantially the east line of the eighty and then runs across the adjoining eighty, which belongs to one Mertesdorf.

Many years ago county ditch No. 13 was constructed. This consisted of a rather shallow open ditch. It is not of any particular importance here, except as it will be mentioned hereinafter. It has now been replaced by county ditch No. 78, which is the ditch now under consideration.

County ditch No. 33 was established and constructed about 1913. It consisted of a tile drain having a diameter of 16 and 18 inches. This ditch, which had its source 2,000 feet northwest of respondents' farm, went through the highway bridge mentioned above at about the section line between sections 10 and 15, then followed the natural watercourse across the Malvin farm, and thence continued east, having its outlet in county ditch No. 13 about 2,000 feet east of the Malvin farm.

In addition to these drainage ditches, some private tile has been laid on the Malvin eighty, running into county ditch No. 33, but

none has been laid in the north quarter. All assessments for county ditch No. 33 have been paid long ago.

The farm land is composed of deep black loam with a clay sub-soil. Aside from two very minor areas, the entire farm is under cultivation. While there was some conflict in the testimony of the witnesses as to the drainage of the farm, the jury would be justified in finding that the farm was adequately drained by existing ditches and tile prior to the establishment of the ditch now under consideration.

Proceedings for the establishment of county ditch No. 78, involved in this appeal, were commenced in 1944. The ditch was established in 1948. As it affects respondents' farm, it is an open ditch 8 feet wide at the bottom and varying in depth from a minimum of 10 feet to a maximum of 18½ feet. The channel banks are constructed with a slope of one foot vertically to one and one-half feet horizontally, resulting in a minimum width of 38 feet and a maximum of 62 feet. The spoil banks are to be spread out on a six-to-one-foot slope; that is, one foot in depth to 6 feet on the level. The spoil banks will vary in width, depending on the depth of the ditch, from 40 to 70 feet, with an average depth of the spoil bank of about 5 feet. The result is that the ditch and spoil bank on the west half of the farm will be from 180 to 190 feet in width and about half of that on the east half of the farm, where one-half of the ditch will lie on the Mertesdorf eighty, which lies immediately east of the Malvin eighty.

The ditch substantially follows the section line. The result is that it severs the 80-acre tract, on which the buildings are located, from the quarter section to the north. It is conceded that it will be necessary for respondents to build a bridge over the ditch in order to enable them to cross from one part of the farm to the other. Witnesses estimated the cost of such bridge at from $590 for a wooden bridge to $3,676.08 for more permanent steel culverts.

The viewers appointed and the county board fixed benefits to respondents' farm at $2,935 and damages at $840. The jury fixed benefits at $1,100 and damages at $8,500. After denial of a motion

for a new trial, judgment was entered, and this appeal by the county is from such judgment.

It is the contention of the county that the verdict is so grossly excessive that it can be accounted for on no other theory than that it is based on passion and prejudice. It claims also that it was error for the court not to instruct on the burden of proof.

Prior to the commencement of the trial, the parties agreed that, instead of asking witnesses the value of the tracts of land involved before and after the ditch was constructed, they might be asked a direct question as to how much the ditch benefited and how much it damaged each tract. The trial proceeded on that basis. The landowners called four witnesses, who testified to benefits and damages, and several others, who testified to the drainage of the farm prior to the construction of the ditch. Of those who testified on the question of benefits and damages, Roy Duncanson, who had lived in Blue Earth county for 13 years and had been a farmer all his life, testified that he could see no benefit from the ditch to respondents' farm and that damages amounted to $25 per acre to the whole farm. O. C. Kunkel, who owned and operated 1,200 acres of land, some of which was in Blue Earth county, and who had acted as appraiser for the state on a few occasions, testified that he could see no benefits to respondents' farm. His opinion was that the farm was damaged to the extent of $40 to $50 per acre. John G. Gerlich, who had lived on a farm most of his life and had acted as appraiser for the state in highway matters and also in ditch proceedings, could see no benefits to respondents' farm. His estimate of damages was $30 per acre. Fred Frederickson, a retired farmer, testified that the farm would not be benefited, but would be damaged to the extent of $40 per acre.

G. K. Francis, a brother of Mrs. Malvin, who had grown up on the Malvin farm, and other witnesses testified that the farm was adequately drained before the big ditch was established. Respondents both stated that in their opinion the farm had been damaged $50 per acre.

Witnesses for the county consisted of the two viewers, who esti-

mated benefits and damages about as they had been originally awarded, and other witnesses, who testified largely on the question of drainage and the necessity for the ditch as it affected respondents' farm. The credibility of the witnesses was for the jury. There was a wide variation in the testimony of the witnesses as to the cost of building a suitable bridge or crossing. Here, also, the jury should be permitted to find the facts.

In Northern States Power Co. v. Barnard, 187 Minn. 353, 355, 245 N. W. 609, we said:

"* * * It is the peculiar province of the jury to determine the amount of the damages. The law does not permit a court, appellate or otherwise, to substitute its own judgment for that of the jury although the verdict may be considerably more (or less) than in the judgment of the court it ought to have been. * * *

*     *     *     *     *

"* * * Where the amount of the verdict does not depend upon computation, the judgment of the jury and not the opinion of the court is to govern, unless the damages are so excessive as to warrant the belief that the jury must have been influenced by passion or prejudice."

By comparison with the award of the viewers and the county board, the verdict might seem excessive. However, the discrepancy could as well be due to the complete inadequacy of the original award as to the excessiveness of the verdict. Both viewers testified as witnesses for the county. They stated that they had considered only two elements of damage, namely, the value of the actual land taken for the ditch channel and the cost of building the bridge. They did not consider any damage due to severance of the farm, the cost of fencing, or the damage caused by spoil banks, since they assumed that these spoil banks could be farmed. There are other elements of damage that could be mentioned which they did not consider. They considered the value of the land taken to be $100 per acre. It goes without saying that a ditch of these proportions cutting substantially through the center of a farm which had

been operated as a single unit is bound to depreciate the value of the farm to some extent. That the spoil banks on each side of the ditch will present difficulties, whether fenced or not, which will result in some reduction in the value of the farm, seems obvious. The jury could find from the evidence that the farm had been adequately drained before the construction of this large ditch. There is nothing in the record which would indicate in the slightest degree anything that might be inclined to arouse passion and prejudice in the minds of the jury, unless it is the size of the verdict itself. As a matter of fact, the case was tried with exceptional and commendable fairness on both sides. There were no exceptions to the court's charge. The witnesses were men thoroughly familiar with farming and farm values. The jury likewise was composed of people familiar with farming. The trial judge comes from a rural area, and it is safe to say that he has had much experience in such matters. Under these circumstances, we should not attempt to substitute our judgment for that of a jury and set aside a verdict which is well within the estimate of competent witnesses as to benefits and damages and which now has the approval of the trial judge.

The jury was permitted to view the premises at the time of the trial in January 1950. At that time the spoil banks were not leveled out, but the dirt was piled high on both sides of the ditch. It was explained to the jury, however, that the spoil banks were to be leveled out, and the evidence shows in detail how high and how wide the spoil banks would be when the job was finished. It was explained also that the black soil had been placed on the bottom of the pile and that it would be mixed, as best it could, with the clay. We do not believe that a jury of rural people would be prejudiced by what they saw, knowing, as they did, how the job was to be finished.

The witnesses for respondents were of the opinion that all parts of the farm would be damaged about equally. The jury assessed damages and benefits to each 40-acre tract separately. It is the county's contention that the verdict is perverse and that the manner in which the jury assessed the damages indicates passion and

prejudice. It is hardly fruitful to speculate as to how the jury assessed its verdict against parts of the farm. The opinion of the witnesses for respondents was that all parts of the farm would be equally damaged in value. It was stipulated that they might give their opinion as they did. We cannot say that the jury's allocation of damages and benefits as to each 40-acre tract under these circumstances is unsupported by the evidence.

Nor do we feel that the fact that others against whom benefits and damages have been assessed may have to pay too large a share in the construction of the ditch would warrant a new trial. Possibly others should have appealed also. The fact that they chose not to do so should not deprive respondents of their right to a jury trial.

The only other error assigned is that the court failed to instruct the jury on the burden of proof. Neither of the parties noticed the omission at the time of the trial. No request was made for such instruction, although the court asked counsel at the close of its charge if there was anything further. The court admits that it was overlooked. Appellant's counsel concede with complete frankness that this oversight, standing alone, would not justify a new trial. Of course that is so. MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 43 N. W. (2d) 221; 6 Dunnell, Dig. § 9788. We are of the opinion that the omission was not prejudicial. The only question submitted to the jury was the amount of benefits and damages. Damages and benefits in some amount must be conceded. The sole question was how much. The testimony of the county's witnesses and of those who appeared for respondents was so far apart that it appears to have been largely a question of which group of witnesses the jury would believe. We do not feel that the jury's verdict would have been different if the court had instructed that the burden of proof rested on respondents.

Affirmed.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.