## EQUIPMENT ADVERTISER, INC. v. ROBERT W. HARRIS AND OTHERS.

136 N. W. (2d) 302.

June 25, 1965—No. 39,703.

*James H. Levy* and *Samuel Saliterman,* for appellants.
*Irving Juster,* for respondent.

FRANK T. GALLAGHER, C.

This is an appeal from an order of the district court denying defendants' motion for amended findings or for a new trial. Plaintiff sought injunctive relief and compensatory and punitive damages, asserting that defendants had conspired to injure its business, had copied a certain circulation list, and had used a deceptively similar name and format for their competing publication after leaving plaintiff's employ.

On April 19, 1963, the Hennepin County District Court issued a temporary injunction restraining defendants from using a deceptively similar name to that of plaintiff. The case was tried on the merits between October 21 and 28, 1963, without a jury. Findings of fact, conclusions of law, and an order for judgment were filed July 17, 1964.

The trial court found that plaintiff is a corporation organized in 1952 under the laws of this state, and is owned entirely by one Percy Ross and his wife; that since its organization it has continuously operated and published the EQUIPMENT ADVERTISER, a tabloid trade paper printed and distributed semimonthly throughout the United States to persons, firms, dealers, and buyers in the building, industrial, and allied trades; that this trade paper is devoted to and contains advertisements exclusively pertaining to the sale of used heavy equipment and accessories in the construction, industrial, and allied trades, and serves as a medium of advertising to prospective buyers and sellers of such equipment and accessories; that plaintiff circulates its publication to approximately 94,000 prospective buyers and sellers, listing the name and address of each on a 3 inch by 5 inch card, the aggregate of these cards being referred to as plaintiff's circulation list; that said list contains approximately 1,600 paid subscribers, including those who advertise in its publication; that

plaintiff regularly entered the date on each of said cards evidencing the time when the name and address contained therein were added to plaintiff's circulation list; that half of the printing and circulation of each issue of EQUIPMENT ADVERTISER is done on the first Thursday and the remaining half on the third Thursday of each month; and that until April 1963 there was but one competitive trade publication having a national circulation equal to or greater than plaintiff's.

The court also found that plaintiff obtained a substantial number of the names and addresses that constituted its circulation list from the lists of registrants at auctions held by Ross and Ross Auctioneer, a corporation engaged in the business of conducting auctions and owned by Percy Ross and his wife, recording on the appropriate cards of its circulation list the date and place of the auction from which such names and addresses were obtained; that the names and addresses so obtained could not have been obtained from any other source; that the remaining names on plaintiff's mailing list were initially obtained from telephone directories, mailing lists, and other sources available to persons other than the plaintiff, but none of said sources contained a complete or accurate list of addresses or classifications of the names therein in accordance with the trade or occupation and location of the persons named in said lists, all of which was necessary for the effective use of a circulation list to attract prospective advertisers; that plaintiff for many years corrected and changed incorrect addresses and names obtained from such sources and classified such names in accordance with their trade, occupation, and locality at a minimum expense to plaintiff of more than $57,000.

It was the further finding of the court that since the commencement of the publication in 1952 it had increased in size from 4 pages to 16 pages in 1957 and in excess of 28 pages in 1963, consisting almost entirely of advertising; and that plaintiff's net income from the publication of EQUIPMENT ADVERTISER was nominal until the year 1958, but with the increase in the volume of advertising it had

averaged approximately $13,000 a year during the period 1958 to 1962.

The court found that defendant Robert W. Harris entered plaintiff's employ on about February 27, 1962, as general manager, editor, and publisher of EQUIPMENT ADVERTISER and quit on March 8, 1963; that defendant Shirley Miner was employed by plaintiff for a period of approximately 10 years through March 22, 1963; that during the last 10 months of her employment she worked with Harris at all times and during this period her duties and those of Harris included performance of substantially all of the work involved in publishing plaintiff's trade publication other than the maintenance of its circulation list; that defendants Harris and Miner were each employed by the month; that defendant Harris was paid a minimum of $450 a month by plaintiff during his employment and defendant Miner was paid $400 a month by plaintiff at all times after September 1962 and through the end of February 1963.

We shall not attempt to set out in detail all of the court's findings and conclusions. We shall refer, however, to those findings, conclusions, and that part of the order for judgment which defendants in their assignment of errors claim are not sustained by the evidence. Neither shall we attempt to review in detail all of the testimony and exhibits. No printed record was filed in this court on appeal except a typewritten transcript of the proceedings, consisting of over 500 pages. Over 60 exhibits were received from the plaintiff and 12 from the defendants. A total of 14 witnesses testified at the trial.

In discussing the question of the weight and sufficiency of the evidence, it is not necessary for us to detail all of the evidence in order to demonstrate the absolute correctness of the trial court's findings. Knutson v. Lasher, 219 Minn. 594, 18 N. W. (2d) 688; Dempsey v. Meighen, 251 Minn. 562, 90 N. W. (2d) 178. It has been held that this court's duty is performed when it has considered all of the evidence in the light most favorable to the trial court's findings and has determined whether the findings are reasonably sustained by the evidence as a whole. Ehmke v. Hill, 236 Minn. 60, 51 N. W. (2d) 811; Board of Education v. Sand, 227 Minn. 202, 34

N. W. (2d) 689. The findings of the trial court will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence and without reasonable evidentiary support. Inland Products Corp. v. Donovan Inc. 249 Minn. 387, 82 N. W. (2d) 691; Dempsey v. Meighen, *supra.*

In defendants' assignment of errors they claim that the evidence does not sustain the court's findings to the effect that (1) defendants Harris and Miner schemed and planned to publish a tabloid publication to injure plaintiff's business and appropriate its business to themselves; (2) defendants Harris and Miner copied all or a substantial part of plaintiff's circulation list; (3) defendant Harris represented to plaintiff's advertisers that defendants' publication would have the same circulation as plaintiff's EQUIPMENT ADVERTISER and before plaintiff had any notice or knowledge that defendants Harris and Miner intended to quit plaintiff's employ and establish a competing publication a number of plaintiff's advertisers were induced to agree to advertise in defendants' publication; (4) the copying of plaintiff's circulation list by the defendants materially and substantially aided defendants in making the representations, the natural and probable effect thereof was to procure and induce advertisers of plaintiff to cease advertising in plaintiff's publication and to advertise in defendants' publication, and defendants intended such representations to have that effect; (5) on April 5 and April 17, 1963, substantially all of defendants' circulation list consisted of names and addresses copied from plaintiff's circulation list; (6) between April 27 and May 2, 1963, defendant Harris added a substantial number of names and addresses to defendants' circulation list; (7) delivery of defendants' publication to names and addresses copied from plaintiff's circulation list materially aided the defendants in procuring and inducing plaintiff's advertisers to cease advertising in plaintiff's publication and to advertise in defendants' publication and it continues to aid defendants to do so and was intended by them to have that effect; (8) it is now impossible to determine with any accuracy which of the names on defendants' circulation list were copied from plaintiff's circulation list or to enforce

an injunction restraining the distribution of defendants' publication to names copied from plaintiff's circulation list without the other methods of enforcement thereafter included.

Defendants also assign as error the trial court's conclusions of law that the acts of defendants Harris and Miner on and before March 8, 1963, in copying plaintiff's circulation list and soliciting plaintiff's advertisers while said defendants were employed by plaintiff constituted a wrongful violation of their duty to plaintiff; that the publication in defendants' tabloid after March 22, 1963, of advertising solicited by said defendants' acts before said date was and is wrongful and unlawful competition with plaintiff for which plaintiff has no adequate remedy at law; also that the publication in defendants' tabloid after March 22, 1963, of advertising solicited with the aid of wrongful mailing and addressing of defendants' publication to names and addresses copied from plaintiff's circulation list was and is wrongful and unlawful competition with plaintiff for which plaintiff has no adequate remedy at law; that said acts on or before March 22, 1963, and said wrongful and unlawful competition with plaintiff after that date to the date of trial wrongfully deprived plaintiff of an opportunity to compete with defendants' publication on fair and even terms, for which plaintiff has no adequate remedy at law; and that plaintiff will be wrongfully deprived of an opportunity to compete with defendants' publication on fair and even terms unless a decree of injunction is entered herein. It is defendants' position that these conclusions are not supported by findings of fact and are based upon conjecture, speculation, and unreasonable inference.

In its order for judgment the court enjoined and restrained defendants Harris and Miner and the corporate defendants, The Advertiser, Inc., and The Bargaineer, Inc., and their agents, servants, employees, and attorneys, and all persons acting in concert with them, including defendants Mail House, Inc., and Jean Harris, jointly and severally for a period of 9 months from the date of entry of final judgment from soliciting or publishing the advertising of any person, firm, or corporation which advertised in EQUIPMENT AD-

VERTISER during March 1963, as shown in the "Index of Advertisers" of the issue published for said month. Defendants contend that this provision of said order for judgment and one enjoining them from distributing their publication unless its issues contained a notice to advertisers stating that defendants had been enjoined from soliciting advertising from advertisers of plaintiff and from mailing their publication to names and addresses copied from plaintiff's circulation list were not supported by the findings or conclusions; that they constitute an abuse of discretion on the part of the trial judge and deprive them of their right to engage in a competing business with the plaintiff. They also contend that the order provides plaintiff with unreasonable, excessive protection beyond that needed to equalize whatever unfair competition may have existed and imposes upon defendants a penalty, deprives them of their right to earn a living, and confiscates their property without authority of law.

Defendants cite Boone v. Krieg, 156 Minn. 83, 194 N. W. 92, and Sanitary Farm Dairies, Inc. v. Wolf, 261 Minn. 166, 112 N. W. (2d) 42, as controlling and decisive of the issues here. We do not consider Boone v. Krieg, *supra*, in point. In that case the plaintiff had engaged in the business of multigraphing letters and advertising materials, addressing letters, and other similar work for many years and had built up a lucrative business. Defendant, aged about 23 at the time of the litigation, worked for plaintiff for about 8 years on a week-to-week contract. It appears that he had been a faithful employee, valuable to the business, and had become acquainted with the customers of the plaintiff with whom he had come into personal contact in the conduct of the business and his solicitation of work. He discontinued his work with plaintiff after giving her 8 days' notice and at once engaged in a similar business on his own account, entered into competition with her, and solicited her former customers. She sought an injunction to prevent him from soliciting or dealing with such customers and from making use of lists of their names which she alleged he copied before leaving his employment. We held that the trial court was correct in refusing to enjoin the defendant from soliciting the patronage of plaintiff's customers; that

the plaintiff's contract had no covenant against his entering a like business; that there was no peculiarly confidential relationship between the parties; that no fraud was practiced and no misrepresentations were made; and that the case was the ordinary one where the employee leaves his employment to better himself, engages in a like business, and seeks the patronage of his former employer's customers.

In the instant case the trial court concluded that the acts of defendants Robert Harris and Miner on or before March 8, 1963, in copying plaintiff's circulation list and soliciting its advertisers while defendants were still employed by plaintiff constituted a wrongful violation of their duty to plaintiff; that their collaboration between March 8 and March 22, 1963, in copying plaintiff's circulation list and soliciting its advertisers constituted a wrongful collaboration in violation of defendant Miner's duty to the plaintiff; and that mailing of defendants' publication to names and addresses copied from plaintiff's circulation list, publication of advertising acquired by soliciting plaintiff's advertisers, and other acts of defendants constituted wrongful and unlawful competition for which plaintiff had no adequate remedy at law.

Sanitary Farm Dairies, Inc. v. Wolf, 261 Minn. 166, 112 N. W. (2d) 42, involved an action to enjoin plaintiff's former employee and its competitor, another company engaged in producing and selling dairy products, from soliciting plaintiff's customers and to have an accounting and recover damages. The trial court issued a temporary restraining order. After a change of venue, another judge vacated the restraining order and denied a motion for temporary injunction. Plaintiff appealed from the order. That case also is distinguished from the instant case. We said there that absent a restrictive covenant *and subject to equitable protection against unfair competition,* after terminating his employment, a driver-salesman may not be enjoined by his employer from soliciting the patronage of former customers on a milk route *if he has enhanced the goodwill of the business* or added new customers. Also, that if such a driver-salesman on a milk route, while still an employee, has solicited customers *in contemplation of commencing his own business,* his em-

ployer is entitled to enjoin him from further soliciting or selling to such customers for a sufficient length of time to permit the employer to compete on even terms.

In the instant case the court found that the defendants "schemed and planned" to injure plaintiff's business; that they copied parts of its circulation list and did other acts which indicated unfair competition, to say the least.

An examination of the testimony and exhibits in the instant case satisfies us that there was evidence to sustain the trial court's decision. There is evidence to justify a finding that commencing sometime not later than February 1963, while defendants Harris and Miner were still in plaintiff's employ, they copied part of plaintiff's circulation list. While they may not have copied "all, or a substantial part," of the list as found by the court, it appears from defendants' own brief that evidence relating to a comparison between plaintiff's and defendants' lists clearly would justify a finding that at least 44.06 percent of the defendants' lists were identical to plaintiff's. The trial court apparently considered that the percentage was much greater when it found that defendants, while in plaintiff's employ, "copied all, or a substantial part, of plaintiff's circulation list."

We find no useful purpose in prolonging this opinion with further comments on the trial court's findings and conclusions except to say that in our opinion the evidence as a whole reasonably sustains its findings; that its conclusions are supported by the findings; and that the order for judgment is supported by the findings and conclusions and should be in all respects affirmed.

Affirmed.

MR. JUSTICE THOMAS GALLAGHER took no part in the consideration or decision of this case.