**MODERN CONTROLS, INC., a Minnesota Corporation, Appellant,**

v.

**Nicholas C. ANDREADAKIS, an Individual, Appellee.**

No. 78–1210.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1978.

Decided June 20, 1978.

Rehearing and Rehearing En Banc Denied July 17, 1978.

Paul G. Neimann (on brief), Wiese & Cox, Minneapolis, Minn., argued, for appellant.

Charles W. Bradley, New York City (argued), and Robert F. Henson, Minneapolis, Minn., on brief, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and BECKER, Senior District Judge.*

* The Honorable William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation.

**1266** 

HEANEY, Circuit Judge.

Modern Controls, Inc., a Minnesota corporation, appeals from the denial of a preliminary injunction. It seeks preliminary and permanent injunctive relief for the breach of an employee confidentiality agreement executed by its former employee, Nicholas C. Andreadakis. In its complaint, Modern Controls alleges that Andreadakis violated the agreement's covenants not to compete or to disclose and use confidential information. After filing the complaint, Modern Controls moved for a preliminary injunction. The District Court denied the motion.[1] We reverse and remand.

I.

Modern Controls is a relatively small company specializing in developing equipment used with computers. Andreadakis, who has a Ph.D. in physics, was employed by Modern Controls from January 27, 1976, until May 27, 1977. While at Modern Controls, Andreadakis helped develop a commercially marketable flat panel gas discharge display device used to display information from a computer to a computer user.[2]

Prior to working for Modern Controls, Andreadakis had worked for Control Data Corporation for five years. For three of those years, he had assisted in developing the flat panel gas discharge display device which had the best commercial prospects of all the similar devices being tested by Control Data. William Mayer, an employee of Control Data and a member of the Board of Directors of Modern Controls, approached Andreadakis and others asking if they would be interested in working for Modern Controls to develop the device commercially. Andreadakis and another member of the team that worked with him expressed

an interest. On January 13, 1976, Mayer brought them both a letter from Modern Controls confirming the oral offer of employment and affirming their acceptance of the offer. Mayer indicated to Andreadakis that he might have to sign a formal employment agreement similar to the one he had at Control Data. Andreadakis gave Control Data a two-week notice of termination and began work at Modern Controls on January 27, 1976.

On the first day of work, Andreadakis was requested to sign an employee confidentiality agreement. He initially refused to do so, but, nine weeks later, he signed it at the insistence of Modern Controls. He realized that the agreement's provisions would seriously restrict his employment if he were to leave Modern Controls, but he signed it because he could not afford to be unemployed. By the terms of the agreement, Andreadakis was to assign to Modern Controls his rights to any inventions developed during his employment and to refrain from disclosing any confidential information obtained while so employed. He also agreed to refrain from working for a competitor of Modern Controls for a two-year period after terminating his employment.

The covenant not to compete is at issue on appeal.[3] It provides that Andreadakis would not work for a competitor of Modern Controls for two years after leaving Modern Controls if the competitor produced or developed a product which Andreadakis worked on while employed at Modern Controls. If, however, the competitor was diversified, Andreadakis could work for the competitor in a division not producing or developing the competing product. Modern Controls agreed to pay Andreadakis his base salary at the time of his termination for two years if he quit but was unable to

---

1. Modern Controls also moved for a permanent injunction which the District Court denied. It does not appeal from that portion of the District Court's order.

2. The device functions in a similar fashion to a cathode ray tube, but it is smaller and lighter.

3. Modern Controls has not appealed from that portion of the District Court's order denying it a preliminary injunction for breach of the covenant not to disclose and use confidential information. However, both parties recognize that the potential or actual disclosure of confidential information is relevant in determining the reasonableness of the covenant not to compete.

find comparable work because of the covenant.

In February or March of 1977, Andreadakis wrote to several companies seeking employment. He received an offer from the Burroughs Corporation and began work there on June 6, 1977. Burroughs was developing a flat panel gas discharge display device similar to that he had helped develop at Modern Controls. Andreadakis was immediately assigned to the division of Burroughs developing the device. He was working in that division at the time of this appeal.

In his letter of resignation from Modern Controls, dated May 13, 1977, Andreadakis failed to indicate he would soon be working for a competitor. Instead, he represented that while he did not know what he was going to do, he was leaving the area of research in which he had been involved and was considering a teaching position in the East. Modern Controls became aware of Andreadakis's employment at Burroughs only by accident and, shortly thereafter, brought this suit to enforce the covenant not to compete.

## II.

The traditional test governing the issuance of preliminary injunctive relief is whether the moving party has shown substantial probability of success at trial and whether that party will suffer irreparable injury in the event the injunction is denied.[4] *Fennell v. Butler,* 570 F.2d 263, 264 (8th Cir. 1978); *Minnesota Bearing Company v. White Motor Corporation,* 470 F.2d 1323,

1326 (8th Cir. 1973). The District Court denied relief primarily on the ground that Modern Controls had not shown a substantial probability of success at trial because it believed the covenant not to compete was unenforceable for three reasons.

■ It first reasoned that the covenant lacked consideration as it was not ancillary to the initial employment agreement and was not supported by independent consideration.[5] We agree that the covenant was not ancillary to the initial oral employment contract and, thus, that the covenant not to compete can be sustained only if it is supported by independent consideration. We disagree, however, with the District Court's finding that there was no independent consideration.

■ Whether a covenant not to compete entered into after employment has commenced is supported by independent consideration is a question that has evoked considerable disagreement in the courts. Many courts support the position that continued employment constitutes sufficient consideration for a covenant not to compete. Annot., 51 A.L.R.3d 825, 835–839 (1973); Blake, *Employee Agreements Not to Compete,* 73 Harv.L.Rev. 625, 669 n. 145 (1960). Other courts require something in addition to the mere continuance of employment. Annot., 51 A.L.R.3d 825, 833–835 (1973). This "something in addition" may be a raise, a new position or an increased employment term. The Minnesota Supreme Court has not yet determined whether continued employment alone is sufficient con-

4. This Circuit has recently adopted an alternative test for preliminary injunctive relief developed by the Second Circuit. Relief is appropriate under this test if there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tips decidedly toward the party requesting the preliminary relief. *Fennell v. Butler,* 570 F.2d 263, 264 (8th Cir. 1978). *See Greshan v. Chambers,* 501 F.2d 687, 691 (2d Cir. 1974); *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2d Cir. 1973). The District Court determined that

Modern Controls was not entitled to relief under either test.

Both parties, however, agree that this Court should determine the matter in light of the traditional test. We recognize that the alternative test may give the same result as the traditional test. *See Frejlach v. Butler,* 573 F.2d 1026 at 1027 n. 4 (8th Cir. 1978).

5. As a contract, a covenant not to compete must be supported by consideration to be enforceable. 6A A. Corbin, Contracts § 1395 (2d ed. 1962); Annot., 51 A.L.R.3d 825, 828 (1973).

sideration for a covenant not to compete.[6] We need not predict what the Minnesota Court would do, however, as the covenant not to compete was supported by something more than the mere continuance of employment. It was supported by an obligation on the part of Modern Controls to pay Andreadakis his base pay for two years if he could not find suitable work in another field.[7] *See Bradford v. New York Times Company,* 501 F.2d 51 (2d Cir. 1974).

Andreadakis argues, however, that Modern Controls is not in fact obligated to pay him the base salary if he is unable to find employment because the agreement provides that

> [Modern Controls] is obligated to make such payments to me, upon my fulfillment of the conditions set forth above, for 24 consecutive months *unless* [Modern Controls] gives me written permission to accept available employment, or gives me a written release from the obligations of [the covenant not to compete]. (Emphasis added.)

Andreadakis contends that what appears to be an "obligation" is in fact a mere "option" running to the benefit of Modern Controls since it may avoid the payments by merely releasing him from the covenant.

■ Modern Controls does have an option but "a promise is not rendered insufficient as a consideration for a return promise by the fact that promisor is expressly given some option, or choice, between performances, provided that this option is not wholly unlimited." 1A A. Corbin, Contracts § 160 at 61 (2d ed. 1963). This option is not wholly unlimited for, if Modern Controls chooses to enforce the covenant, it becomes unconditionally bound to pay him if he is unemployed as a result of the covenant. If Modern Controls refuses to pay Andreadakis, it must release him from the covenant or become liable for breach of contract. Andreadakis's promise not to compete for two years and Modern Controls' promise to pay him his base salary for two years are both conditioned on Modern Controls' decision to enforce the covenant and both promises must either be performed together or not at all. *See* 1A A. Corbin, Contracts §§ 160, 161 (2d ed. 1963).

■ Second, the District Court reasoned that the covenant not to compete was unenforceable because Modern Controls had not proved that trade secrets existed with respect to the device. It erred in so holding.[8]

■ The Minnesota Supreme Court has held that confidential business information which does not rise to the level of a trade secret can be protected by a properly drawn covenant not to compete. *Walker Employment Service, Inc. v. Parkhurst,* 300 Minn. 264, 219 N.W.2d 437 (1974); *Bennett v. Storz Broadcasting Co.,* 270 Minn. 525, 134 N.W.2d 892 (1965). *Cf. Equipment Advertiser, Inc. v. Harris,* 271 Minn. 451, 458, 136 N.W.2d 302, 306 (1965). *See generally* Blake, *Employee Agreements Not to Compete, supra* at 669 n. 146. To require an employer to prove the existence of trade secrets prior to enforcement of a covenant not to compete may defeat the only purpose for which the covenant exists. An employer need only show that an employee had access to confidential information and a court will then determine the overall reasonableness of the covenant in light of the interest sought to be protected. *Eutectic*

---

Ordinarily, this consideration is furnished by an employee's acceptance of employment from the employer.

6. The parties agree that Minnesota law governs the enforceability of the covenant not to compete.

7. The employee confidentiality agreement provides that
> [i]f I [Andreadakis] am unable to obtain employment consistent with my abilities and education, solely because of the provisions of this [covenant not to compete], * * *

such provisions shall continue to bind me only as long as [Modern Controls] shall make payments to me equal to my monthly base pay at termination (exclusive of extra compensation, bonus or employee benefits) for each month of such unemployment.

8. The District Court may have felt that an action for appropriation of trade secrets was involved rather than an action for the breach of a covenant not to compete. *See Eutectic Welding Alloys Corporation v. West,* 281 Minn. 13, 18–20, 16 N.W.2d 566, 570–571 (1968).

*Welding Alloys Corporation v. West,* 281 Minn. 13, 18–20, 160 N.W.2d 566, 570–571 (1968). Modern Controls has established by affidavit that Andreadakis had access to confidential business information.[9]

■ Andreadakis claims that he and the persons he was working with developed no confidential business information during his employment that he did not already know. He argues that he left Modern Controls with no more information than he possessed when he left Control Data. The affidavits submitted by Andreadakis do not support this contention. To the contrary, the unrefuted evidence shows that during the time of his employment, the device moved from an unmarketable state to a marketable one and that this transition was accomplished after Modern Controls invested over $500,000 and utilized approximately one-half, or seventeen, of its employees over a sixteen-month period.[10]

■ Third, the District Court reasoned that the covenant was unenforceable because the employee confidentiality agreement that encompassed the covenant not to compete was broader in scope than reasonably necessary to protect any legitimate need of Modern Controls. It noted that the agreement required Andreadakis to assign to Modern Controls his rights to inventions developed during his employment with that company depending on the nature of the invention and the circumstances under which it was developed.[11]

■ Assuming the unenforceability of this provision,[12] we fail to see how it affects the enforceability of the covenant not to compete. Under the "blue pencil doctrine," the Minnesota courts would strike the offending provision from the agreement and enforce the covenant not to compete. *See Bess v. Bothman,* Minn., 257 N.W.2d 791 (1977); *Alside, Inc. v. Larson,* 300 Minn. 285, 294, 220 N.W.2d 274, 280 (1974). Thus, we conclude that Modern Controls would probably succeed on the merits because, on the basis of the evidence before the Court, the covenant not to compete was enforceable. The District Court's contrary determination was based on erroneous legal premises.

### III.

The District Court also denied relief on the ground that Modern Controls had failed to show irreparable harm because it had not established that Andreadakis had disclosed or would disclose trade secrets or confidential business information gained at Modern Controls to Burroughs. Andreadakis emphasizes on appeal that Burroughs specifi-

9. The confidential business information includes the methods used to lay a thin glass layer over the conductors and glass substrate of the device, the manner of making electrical connections to the conductors, the methods followed in creating channels in a glass cover plate that fits over the glass layers and conductors, the manner of bonding the cover plate to the device and the processes utilized in exhausting the air within the bonded plate, layers and substrate. Andreadakis and others were periodically advised that this information was secret and should not be disclosed to those not working on it. Only authorized personnel were allowed in the laboratory where the device was being worked on.

10. The District Court also found that Modern Controls had a patent on the flat panel display device and, thus, its production techniques were in the public domain. *See* 35 U.S.C. § 112. However, the existence of a patent does not affect the existence of or protection to be afforded to trade secrets or other confidential information not required to be disclosed in the patent. *See Ferroline Corp. v. General Aniline & Film Corp.,* 207 F.2d 912, 921 (7th Cir. 1953), *cert. denied,* 347 U.S. 953, 74 S.Ct. 678, 98 L.Ed. 1098 (1954).

11. The agreement was made

[w]ith respect to any Inventions made or conceived by me [Andreadakis] either solely or jointly with others while on duty with [Modern Controls] whether or not on [Modern Controls'] premises; or as to Inventions relating or pertaining to products, processes, or ideas being researched, developed, investigated, manufactured, or used by [Modern Controls] which I make or conceive of solely or jointly with others while I am employed by [Modern Controls] but not on duty, or during the period of one year after my termination of employment with [Modern Controls].

12. Such provisions are valid, if they are restricted to the line of actual employment involved and not unreasonably extended in time. 6A A. Corbin, Contracts § 1394A (2d ed. 1962).

cally instructed him not to disclose any trade secrets and that since he has already worked for Burroughs for about a year without disclosing any trade secrets or other confidential information, it is unlikely that he would do so in the future.

■ The possible disclosure of trade secrets and confidential information is certainly relevant in determining the potential harm to an employer. However, such information may be disclosed in more subtle ways than outright disclosure to a third party. As Professor Harlan M. Blake noted,

> [e]ven in the best of good faith, a former technical or "creative" employee working for a competitor, or in business for himself in the same or a related field, can hardly prevent his knowledge of his former employer's confidential methods or data from showing up in his work. And utmost good faith cannot always be expected. (Footnote omitted.)

Blake, *Employee Agreements Not to Compete, supra* at 669–670.

■ It is unrealistic to expect that Andreadakis has not utilized confidential information gained at Modern Controls when working on an identical product at Burroughs. It is equally unrealistic to expect that this confidential information will not give Burroughs a significant advantage over its significantly smaller competitor. Burroughs has the capacity to devote a large amount of its resources to the development of a competing device that would eliminate Modern Controls' competitive advantage. Andreadakis's knowledge would be invaluable in this respect. These factors lead to the conclusion that Modern Controls will suffer irreparable harm.[13]

### IV.

Andreadakis argues that the covenant not to compete should not be equitably enforced in any event because of "unclean hands" on the part of Modern Controls. He

contends that the conduct of Modern Controls in inducing him to leave Control Data without first informing him that a covenant not to compete would be included in his new employment agreement was inequitable.

The District Court did not address this issue and, thus, it would be inappropriate for us to reach it on this appeal. We note, however, that Andreadakis has made an inadequate showing of unclean hands on the basis of the record before the Court. He has not shown that Modern Controls intentionally misled him. Moreover, his own conduct is subject to question. He attempted to conceal his employment with Burroughs from Modern Controls and his covenant not to compete with Modern Controls from Burroughs. When he left Modern Controls, he was deliberately vague about his new employment. He indicated that he was leaving the area of research involving the device and would probably inquire into a teaching position although he had already secured a position with Burroughs. When the record is fully developed in the proceeding for a permanent injunction, Andreadakis may make a sufficient showing to justify the denial of equitable relief. However, he has not done so to this point.

In light of the above discussion, we have no alternative than to hold that the District Court erred in failing to grant a preliminary injunction. Its decision was based on erroneous legal premises. *See Fennell v. Butler, supra* at 264; *Waste Management, Inc. v. Deffenbaugh,* 534 F.2d 126 (8th Cir. 1976); *On-Line Systems, Inc. v. Staib,* 479 F.2d 308 (8th Cir. 1973).

This opinion obviously does not constitute a final decision on the merits. When the record is fully developed, what appears to be a reasonable covenant not to compete may prove unreasonable. *See Thermorama, Inc. v. Buckwold,* 267 Minn. 551, 553 n. 4, 125 N.W.2d 844, 846 n. 4 (1964). However, in light of the present record, it is clear to

---

**13.** Andreadakis argues that he will suffer irreparable harm if a preliminary injunction is granted because he will necessarily have to leave Burroughs and seek other employment, and he could not accept other employment on the basis that he would return to Burroughs if he ultimately prevails in this case. No such necessity was shown.

this Court that the District Court erred in failing to grant preliminary injunctive relief to Modern Controls.

The decision of the District Court is reversed and the cause remanded for further proceedings consistent with this opinion.