MEDTRONIC, INC., a Minnesota corporation, Appellee,

v.

S. Todd GIBBONS, an individual, Appellant.

No. 82–1084.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1982.

Decided July 23, 1982.

Henson & Efron, P. A., Robert F. Henson, Stuart T. Williams, William E. Drake, Thomas N. Lindstrom, Medtronic, Inc., Minneapolis, Minn., for Medtronic, Inc.

Cox & Goudy, Charles A. Cox and Craig A. Goudy, Minneapolis, Minn., Lynch, Sherman & Cox, Erwin A. Sherman and Donald L. Cox, Louisville, Ky., for appellant; Robert A. Sandler, Gen. Counsel, Pacesetter Systems, Inc., Sylmar, Cal., of counsel.

Before McMILLIAN, Circuit Judge, STEPHENSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

S. Todd Gibbons appeals from an order entered in the District Court[1] for the District of Minnesota granting Medtronic, Inc.'s motion for a preliminary injunction restraining Gibbons from violating a restrictive covenant in an employment contract. *Medtronic, Inc. v. Gibbons,* 527 F.Supp. 1085 (D.Minn.1981). For reversal Gibbons argues that the district court erred in (1) refusing to apply California substantive law on restrictive covenants in employment contracts, (2) finding a threat of irreparable harm, and (3) refusing to find that Medtronic was collaterally estopped from claiming irreparable harm. For the

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

reasons discussed below, we affirm the grant of preliminary injunctive relief.

The facts are fully set forth in the district court's thorough memorandum opinion. This court recently clarified the factors to be considered in determining whether to grant preliminary injunctive relief in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (banc):

>   (1) the threat of irreparable harm to the movant;
>   (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*See also, Moore v. Curtis 1000, Inc.*, 640 F.2d 920, 921–22 (8th Cir. 1981) (restrictive covenant in employment contract; Georgia substantive law). The district court found that Medtronic established the threat of irreparable harm from the loss of goodwill, the disclosure of confidential business information, and the loss of business, the monetary value of which would be almost impossible to calculate. *Medtronic, Inc. v. Gibbons*, 527 F.Supp. at 1090–92. The district court also found that Medtronic had shown a likelihood of success on the merits because it appeared that under Minnesota law the employment contract was valid and the restrictive covenant enforceable. *Id.* at 1092–94. The district court further found that the balance of the threat of irreparable harm against the possible injury caused by injunctive relief favored Medtronic because enjoining Gibbons from violating the restrictive covenant would not prevent Gibbons from working as a sales representative for his new employer, Pacesetter Systems, Inc., in the same territory he covered for Medtronic. *Id.* at 1094. Under the terms of the restrictive covenant Gibbons would be prohibited only from contacting or communicating with recent customers of Medtronic for 360 days following his termination of employment. *Id.* Moreover, as not-ed by the district court, Pacesetter had agreed to pay Gibbons a substantial monthly stipend if he were enjoined from contacting former Medtronic customers. *Id.* The district court lastly found that consideration of the public interest only slightly favored Gibbons, who argued that he performed important and beneficial public services by making the best medical equipment available to doctors and hospitals, *id.* at 1095, and did not prevent granting injunctive relief on the basis of the other three *Dataphase factors. Id.* The district court granted a preliminary injunction restraining Gibbons from violating the restrictive covenant, effective until a decision is rendered after a trial on the merits or September 4, 1982 (360 days after his termination of employment on September 8, 1981), whichever occurs first. This appeal followed.

"The scope of review on appeal from an order granting or denying a preliminary injunction is limited. It has been repeatedly ruled that such an interlocutory order may be reversed only if the trial court abused its discretion or based its decision on an erroneous legal premise." *Rittmiller v. Blex Oil, Inc.*, 624 F.2d 857, 859 (8th Cir. 1980), *citing FTC v. National Tea Co.*, 603 F.2d 694, 696 (8th Cir. 1979).

■ Gibbons first argues that the district court erred in refusing to apply California substantive law to determine the validity and enforceability of the restrictive covenant. Gibbons argues that this type of restrictive covenant is not enforceable under California law, citing Cal.Bus. & Prof. Code § 16600 (West 1964)[2] and *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324 (9th Cir. 1980) (excellent discussion of California law on enforceability of restrictive employment covenants). We hold that the district court did not err in applying Minnesota substantive law. "The conflict-of-law rules of the forum state control which substantive law should apply." *Jump v. Goldenhersh*, 619 F.2d 11, 13 (8th

---

**2.** Cal.Bus. & Prof.Code § 16600 (West 1964) provides: "Every contract by which anyone is restrained from engaging in a lawful profes-sion, trade, or business of any kind is to that extent void."

Cir. 1980), *citing Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), and *Manchester Premium Budget Corp. v. Manchester Insurance & Indemnity Co.*, 612 F.2d 389, 391 n.8 (8th Cir. 1980). Minnesota courts allow the parties to a contract to control the choice of law by express contractual provision. *See, e.g., Milliken & Co. v. Eagle Packaging Co.*, 295 N.W.2d 377, 380 n.1 (Minn.1980); *Combined Insurance Co. v. Bode*, 247 Minn. 458, 464, 77 N.W.2d 533, 536 (1956) ("[This court is] committed to the rule that the parties, acting in good faith and without an intent to evade the law, may agree that the law of [another state] shall govern."). *See generally* R. Leflar, American Conflicts Law § 147 (3d ed. 1977). Here, the employment contract contained an express choice of law provision providing that any disputes arising under the contract would be governed by Minnesota law. We see no federal constitutional obstacle to the choice of Minnesota law; here, Minnesota clearly has the requisite "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Insurance Co. v. Hague*, 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). As noted by the district court, the employment contract was executed in Minnesota at a time when both parties were residents of Minnesota, and Gibbons worked under the employment contract in Minnesota for almost a year and then in California for almost three years.

■ In any event, we think that the question of the enforceability of the restrictive covenant may be a "false conflict" is-

sue. Under Minnesota law restrictive covenants are strictly construed but will be enforced to the extent they are reasonable and protect a legitimate interest of the employer. *Minnesota Mining & Manufacturing Co. v. Kirkevold*, 87 F.R.D. 324, 328 (D.Minn.1980), *citing Cherne Industrial, Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 88 n.2 (Minn.1979); *Walker Employment Service, Inc. v. Parkhurst*, 300 Minn. 264, 219 N.W.2d 437 (1974); *Eutectic Welding Alloys Corp. v. West*, 281 Minn. 13, 160 N.W.2d 566 (1968); *and Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 534, 134 N.W.2d 892, 899 (1965); *see also Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264 (8th Cir. 1978) (Minnesota law). In particular, Minnesota courts have granted injunctive relief "against a party who has, in violation of an explicit agreement or a common law duty, wrongfully used confidential information or trade secrets obtained from his employer." *Cherne Industrial, Inc. v. Grounds & Assocs.*, 278 N.W.2d at 92, *citing Equipment Advertiser, Inc. v. Harris*, 271 Minn. 451, 136 N.W.2d 302 (1965); *see also Thermorama, Inc. v. Buckwold*, 267 Minn. 551, 125 N.W.2d 844 (1964). Moreover, contrary to Gibbons' argument, the law of California is apparently similar. *See Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d at 1329–34, 1338; *Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal.App.3d 458, 151 Cal. Rptr. 118 (1978); *Greenly v. Cooper*, 77 Cal.App.3d 382, 143 Cal.Rptr. 514 (1978). Thus, even assuming for the purposes of argument that Minnesota conflicts law would have referred to California substantive law, the restrictive covenant may be enforceable under California law as well.[3]

3. As explained in *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1329–30, 1338–39 (9th Cir. 1980) (citations omitted):

California courts have recognized that a person has a substantial interest in the unrestrained pursuit of his livelihood and must, within limits, be allowed to change employers and compete with former employers for available customers....

On the other hand, a person is not always free to solicit customers of a former employer or to use information acquired during his former employment. In *Empire Steam Laun-*

*dry v. Lozier*, 165 Cal. 95, 130 P. 1180 (1913), the California Supreme Court held that in certain circumstances a court may enjoin an employee from unwarranted use or disclosure of the trade secrets and confidential information of his former employer, and that a customer list can be such a trade secret....

. . . .

We think the applicable California law is that "the employer will be able to restrain by contract only that conduct of the former employee that would have been subject to judi-

Gibbons next argues that the district court erred in finding that Medtronic established a threat of irreparable harm. Gibbons argues that the district court improperly inferred irreparable harm from the breach of a valid and enforceable restrictive covenant and that any harm established by Medtronic was compensable in money damages and thus did not support a finding of irreparable harm. We must disagree. Here, the district court did not simply infer irreparable harm from the allegation of Gibbons' breach of a valid and enforceable restrictive covenant alone. Rather, it considered the evidence presented by Medtronic showing Gibbons' access to confidential information, his employment by a competitor of Medtronic in the same sales territory, the "symbiotic relationship" between the sales representative and manufacturer in this particular industry, the relationship between the sales representative and the customers, the substantial investment made by Medtronic in the training of its sales representatives, and the substantial assistance given by Medtronic to its sales representatives in developing information about customers and goodwill. *Medtronic, Inc. v. Gibbons*, 527 F.Supp. at 1091. These factors support a finding of irreparable harm. The possible disclosure or use of confidential information such as customer information, *see Davies & Davies Agency v. Davies*, 298 N.W.2d 127, 131 (Minn.1980); *Cherne Industrial, Inc. v. Grounds & Assocs.*, 278 N.W.2d at 90, is relevant in determining the potential harm to the former employer. *See Modern Controls, Inc. v. Andreadakis*, 578 F.2d at 1270.

The district court found that it would be extremely difficult or impossible to calculate the loss in sales that would be suffered by Medtronic during the year (the restrictive covenant lasts 360 days) following Gibbons' termination and in future years. *Medtronic, Inc. v. Gibbons*, 527 F.Supp. at 1092. We cannot say that this finding is clearly erroneous.

Gibbons also argues that the district court erred in refusing to find that Medtronic was collaterally estopped from asserting irreparable harm because the District Court for the Western District of Kentucky had denied Medtronic's motion for a preliminary injunction to prevent Pacesetter from allowing those of its sales representatives who were formerly employed by Medtronic to solicit Medtronic customers. *See Pacesetter Systems, Inc. v. Medtronic, Inc.*, Civ.No. 79–0097 (W.D.Ky. Mar. 26, 1981). Gibbons argues that the issue of irreparable harm to Medtronic from the solicitation of Medtronic customers by former Medtronic sales representatives now employed by Pacesetter was resolved against Medtronic in the Western District of Kentucky proceeding, in which Medtronic was a party, and thus should collaterally estop Medtronic from claiming irreparable harm in the present action. Gibbons did not raise the question of collateral estoppel in the district court and this failure precludes its consideration on appeal. Moreover, the doctrine of collateral estoppel requires a prior final judgment; the granting or denial of a preliminary injunction is generally not based on a final decision on the merits and is not a final judgment for the purposes of collateral estoppel. *See Starbuck v. City & County of San Francisco*, 556 F.2d 450, 457 n.13 (9th Cir. 1977), *citing* 1B Moore's Federal Practice ¶¶ 0.401, .409[1], .441[2] (2d ed. 1947).

Accordingly, the order of the district court is affirmed.

cial restraint under the law of unfair competition, absent the contract." . . .

On the other hand, if the information used by the former employee is confidential or his solicitation activity constitutes unfair competition, then contracts with [restrictive competition clauses] have been enforced by California courts.