**Dale NEILAN, Respondent,**

v.

**Craig G. BRAUN, Appellant.**

**No. C8–84–28.**

Court of Appeals of Minnesota.

Sept. 18, 1984.

Harry N. Ray, Bloomington, for respondent.

Ernest J. Darflinger, Farmington, for appellant.

Heard, considered, and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

Defendant appeals the district court's award of actual damages and its denial of treble damages for injury to defendant's corn crop caused by plaintiff's trespassing cows.

We affirm the actual damage finding and reverse the denial of treble damages.

## FACTS

In 1982 Craig Braun, defendant-appellant, leased from Dale Neilan, plaintiff-respondent, fifty-two acres of farmland for annual rent of $5,200.00, due in two installments of $2,600.00 each. Adjacent to and separated by a fence from the leased farmland lay a pasture owned by Neilan. Despite the fence, Neilan's cattle entered upon Braun's farmland several times between the end of May and early August, 1982. The cows ate, trampled, and lay upon Braun's corn.

Because of the damage caused by the cows, Braun refused to pay the second $2,600.00 rent installment and Neilan sued. At trial the parties stipulated to Braun's liability for the rent, subject to any setoff

for Braun's counterclaim for actual and treble damages.

The trespasses began on or about May 25, 1982, when several of Neilan's cows entered Braun's cornfield. The cows apparently climbed through or over the fence separating the cornfield and pasture. Neilan and a Mr. Idecker testified they added new wire to the fence in late May and early June to prevent such incidents. After the wiring, they testified, no cows got through.

However, on June 11, 15, 17, 18, and twice on the 19th Braun notified Neilan that one of Neilan's cows had entered the cornfield. On three occasions in late July and early August a witness saw four or five of Neilan's cows in Braun's cornfield. Furthermore, Braun and one of his employees testified that while operating the combine they could see pathways running through the cornfield where cattle had trampled the corn.

Neilan's problems with cows escaping from the pasture were not limited to the incidents involving Braun. A dispatcher for the Farmington Police testified the police had notified Neilan about his animals roaming free on ten separate occasions in 1981 and nine in 1982.

Defendant also offered evidence of the damage done by the cows. He testified that he fertilized and planted for a yield of 120 bushels per acre in 1982, but only recovered 96 bushels per acre. For purposes of calculating damages, he estimated his yield would have been 118 bushels per acre had the cows done no damage. However, the trial court calculated damages to the crop at $1,297.52, which assumed a prospective yield of 104.75 bushels per acre. The trial court apparently found low rainfall and other factors would have precluded a 118 bushel per acre yield.

The County Executive Director for the United States Department of Agriculture (USDA) testified Braun's acreage lay between dry areas to the north and wet areas to the south. Farms to the north often yielded 30 bushels per acre, while many to the south yielded well over 100 bushels per acre. The County Director also testified that, assuming Braun's field received as much rain as areas to the south, it should have yielded about 125, plus or minus 10, bushels per acre. But on cross-examination he admitted Braun's field received less rain than the farms to the south. He also testified that the sandy loam of defendant's cornfield required more rain to produce the same amount of crops as the heavier soil of southern farms.

## ISSUES

1. Did the trial court's failure to adopt one of the actual damage estimates specifically offered in evidence constitute clear error?

2. Did plaintiff knowingly permit his cattle to run at large or trespass on defendant's cornfield, requiring the imposition of treble damages?

## ANALYSIS

### 1. Actual Damages

■ Braun claims the district court found insufficient actual damages. Determination of actual damages presents a question of fact. *In Re Dreosch*, 233 Minn. 200, 204, 46 N.W.2d 464, 466 (1951). A trial court's factual findings should not be set aside unless clearly erroneous. Minn. R.Civ.P. 52.01.

The trial court found Neilan's cows caused $1,297.52 in damages to defendant's crop. In light of the number of acres planted, price per bushel, and actual yield of 96 bushels per acre, the court's damage award assumed Braun's field would have yielded 104.75 bushels per acre if the cows had caused no damage. The lowest estimated yield expressly offered in evidence was 125 minus 10, or 115, bushels per acre.

Braun argues the court's use of a lower assumed yield than the lowest one offered in evidence constituted error. He claims the trial court must adopt a yield estimate expressly offered in evidence.

■ Braun incorrectly asserts the trial court must adopt one of the damage esti-

mates specifically offered in evidence. The Minnesota Supreme Court has stated that a trial court need not adopt the exact figures of any witness in determining * * damages * * * and as long as its finding is within the mathematical limitations established by the various witnesses and is otherwise reasonably supported by the evidence as a whole, such finding must be sustained.

*Carroll v. Pratt*, 247 Minn. 198, 202, 76 N.W.2d 693, 697 (1956). On appeal such evidence must be considered in the light most favorable to the trial court's findings. *Equipment Advertiser, Inc. v. Harris*, 271 Minn. 451, 454, 136 N.W.2d 302, 304 (1965). Braun must show no substantial evidence reasonably supports the trial court's finding before the reviewing court may overturn the finding. *Engquist v. Wirtjes*, 243 Minn. 502, 506, 68 N.W.2d 412, 416 (1955).

■ The evidence as a whole reveals the County Director based his estimate of 125 (plus or minus 10) bushels per acre on the assumption the field received adequate rainfall. However, the County Director also testified the field sat between northern dry areas yielding 30 bushels per acre and southern wet areas yielding over 100 bushels. Other testimony indicated that the variables of sun, fertilizer, herbicide, and cultivation technique could all have affected the yield. Therefore, the evidence as a whole reasonably supported the district court's implicit finding of an expected yield of 104.75 bushels per acre; an amount within the mathematical limitations established by the evidence.

## 2. Treble Damages

Braun asserts Minn.Stat. § 561.09 (1982) entitles him to treble damages:

In case the owner or occupant of lands shall not distrain the animals * * * doing damage as provided herein, then any person who shall knowingly permit the running at large or trespass of any such domestic animal * * * within any city, shall be liable to the person aggrieved for treble damages sustained by him, to be recovered in a civil action.

■ Whether the facts found justify an award of treble damages presents a question of fact. *Tait v. Thomas*, 22 Minn. 537, 538 (1876). The evidence supported the trial court's findings that the cows belonged to Neilan, that they entered the land leased by Braun damaging Braun's crop, and that the trespass occurred within the City of Farmington. Neilan argues, however, the cows did not run at large because the cows remained on fenced property owned by Neilan and merely leased by Braun.

■ "Running at large" means to roam unrestrained or unconfined. *Goener v. Woll*, 26 Minn. 154, 157, 2 N.W. 163, 165 (1879). Unrestrained cattle, even when upon the owner's property, present a risk of injury to the interests of others. In *Goener*, the court said that keeping an animal in an enclosure, tying him, or watching him, prevents the animal from running at large. *Goener*, 26 Minn. at 157, 2 N.W. at 165. Since Neilan's cows repeatedly got out of the pasture and onto Braun's field, the cows ran at large within the meaning of Minn.Stat. § 561.09.

■ Neilan also asserts no trespass occurred. Arguably, Neilan could not trespass on land he owned. However, if the possessor of property has a right of possession against the owner and sues the owner in trespass, mere ownership of title without a superior right of possession is not a defense to the action. *Smith v. Price*, 42 Ill. 399, 400–01 (1866). A valid lease provides the lessee with a right of possession superior to that of the lessor. *See West Chicago Street RR. Co. v. The Morrison, Adams & Allen Company*, 160 Ill. 288, 304, 43 N.E. 393, 398–99 (1896). The entry of Neilan's cows onto lessee's (Braun's) cornfield constituted trespass.

■ Finally, to recover treble damages Braun must prove that Neilan "knowingly permitted" his cattle to trespass or run at large. Neilan knew his cows were getting into Braun's cornfield because he received seven notices to that effect and his family

attempted to chase a cow out of the cornfield on four occasions.

The trial court denied treble damages apparently because Neilan made efforts to fix the fence and therefore did not "permit" the trespass. "Permit" has several meanings including "to give an opportunity" and "to make possible." *Peterson v. Pawelk*, 263 N.W.2d 634, 637 (Minn.1978). The evidence indicates Neilan did make it possible for his cows to cross the fence and damage the cornfield. Neilan testified Mr. Ideker helped him mend the fence between the end of May and early June and that when they completed the mending, the fence confined the animals.

However, at least one of Neilan's cows got onto Braun's field on June 11, 15, 17, and 18, 1982, after the alleged reinforcement of the fence. Furthermore, one witness saw about four of Neilan's cows on Braun's property on three separate occasions during the end of July and the beginning of August, 1982, indicating the fence did not restrain the cattle. The evidence therefore shows Neilan "knowingly permitted" his cows to trespass because, although able, he failed to adequately reinforce the fence when he knew the cows were repeatedly crossing it.

### DECISION

We affirm the trial court's finding of actual damages because the evidence as a whole reasonably supports the finding. We reverse the trial court's denial of treble damages because plaintiff knew his cows were getting into defendant's cornfield and plaintiff, although able, failed to prevent further trespasses.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion on the issue of treble damages.