## SANITARY FARM DAIRIES, INC. v. DONALD F. WOLF AND ANOTHER.

112 N. W. (2d) 42.

October 13, 1961—No. 38,452.

*Richard G. Lareau, Horace W. Mohn,* and *Oppenheimer, Hodgson, Brown, Baer & Wolff,* for appellant.

*Neumeier, Rheinberger & Eckberg,* for respondents.

OTIS, JUSTICE.

The plaintiff, Sanitary Farm Dairies, Inc., appeals from an order of the District Court of Washington County denying its motion for a

temporary injunction and vacating a restraining order issued by the District Court of Ramsey County prior to a change of venue. The relief sought being interlocutory and the lower court having entered no findings, we are obliged to resolve the issues of fact on the basis of what appears from the pleadings to be undisputed and the admissions of the parties as disclosed by their affidavits.

The plaintiff is in the business of producing and selling dairy products in an area which includes Washington County. In December 1955 the plaintiff employed defendant Donald F. Wolf as a driver to solicit customers and sell its products. To that end, plaintiff furnished Wolf with a truck, assumed the expense of its maintenance, supplied the dairy products for Wolf to sell, and paid him a salary and commissions. Plaintiff claims that over half of the patrons Wolf served were obtained by plaintiff's efforts and at its expense, while defendant Wolf asserts that nearly all of the customers here involved were obtained through his solicitation. According to Wolf's affidavit, he advised defendant Maple Island, Inc., a competitor of plaintiff, in February 1961 that he planned to terminate his employment with plaintiff but that he thereafter changed his mind. However, Wolf states that on March 24, 1961, he gave plaintiff notice of termination as of April 7, 1961, and disclosed his intention of going into business for himself with a view to selling products of the defendant Maple Island. It is Wolf's further contention that the plaintiff thereupon assigned another employee to his routes for a period of 4 days for the purpose of permitting him to become familiar with the list of customers. Wolf asserts that thereafter pressure was brought to bear on him by plaintiff and he advised plaintiff he would reconsider his decision. On April 4, 1961, at the end of the day, he returned the truck, the list of customers, and all other property to plaintiff and advised plaintiff's supervisor that he was quitting his job effective that date, and would begin distributing Maple Island dairy products on his own behalf the following day.

In his answer defendant Wolf states that he was successful in soliciting for himself the patronage of 59 customers he had previously served on plaintiff's behalf, all but 18 of whom he was solely responsible for originally acquiring. Of the 59 customers whom he retained,

Wolf claims 90 percent were personal acquaintances prior to his employment with plaintiff.

In its answer Maple Island states that it leased a delivery truck to Wolf and sold Wolf its dairy products on a wholesale basis but otherwise had no connection whatever with Wolf's customers.

It is the contention of plaintiff that the names of its customers constitute a confidential list which Wolf had no legal right to utilize after his employment ended and that Wolf violated his duty of undivided loyalty to his employer by soliciting plaintiff's customers prior to the termination of his employment. Wolf alleges that on April 3 and 4 he advised approximately 50 percent of the customers on his routes that he would not thereafter be selling plaintiff's products and that he would at a later time solicit their patronage on his own behalf. He admits that he distributed no more than six printed announcements on April 3 and 4 in words and figures as follows:

"ANNOUNCING . . . .

"On or before April 7, 1961, I will be in business for myself distributing Maple Island Dairy Products.

"I am asking for the opportunity to continue serving you with a complete line of Finest Quality dairy items from Maple Island.

"Thank you very much.

"DON WOLF, Stillwater, Minn.
"Res. Tel. HE 9-4771
Bus. Tel. HE 9-2330"

In his affidavit Wolf states that prior to April 3 he discussed with no more than twelve customers the possibility of changing his employment.

The relief sought by plaintiff is as follows: A permanent injunction restraining defendants from interfering with plaintiff's patrons or former patrons on the routes Wolf serviced prior to his quitting, enjoining the defendants from inducing plaintiff's patrons or former patrons to purchase dairy products from defendants, enjoining defendants from using the names and addresses of plaintiff's patrons obtained by Wolf while working for plaintiff, and enjoining defendants from serving plaintiff's former customers solicited by Wolf for his own benefit and the benefit of Maple Island while Wolf was still employed by plaintiff; an ac-

counting for sales made to plaintiff's former patrons; and $2,500 actual damages and $10,000 punitive damages.

On April 7, 1961, this action was begun and contemporaneously a restraining order was issued by the District Court of Ramsey County enjoining defendants until further order of the court from selling to those patrons or former patrons of plaintiff who had previously been handled by Wolf. A change of venue to Washington County was demanded and effected on April 10, and on April 13 the District Court of Washington County denied plaintiff's motion for a temporary injunction and vacated the restraining order of April 7. The following day plaintiff appealed to this court and secured the reinstatement of the original restraining order of April 7 pending the determination by this court of the appeal from the order denying a temporary injunction.

■ We are of the opinion that our decision hinges on principles of unfair competition rather than on the question of whether plaintiff has a property right in the names and addresses of the customers who were served by defendant Wolf. At the outset it should be noted that the authorities distinguish so-called "route" cases from other types of employment involving solicitations and sales. In actions of this kind the rights and obligations of the employer and employee are to be determined on the basis of the contribution each party has made to building the business and to enhancing the goodwill of the patronage involved. We believe the trial court's decision must rest on what, in equity and good conscience, each party has earned at the termination of the employment relationship. Thus, where an employee has obtained from his employer at the inception of their relationship a list of customers on a given route, or the names of customers who have no particular geographical continuity, and the employee has made no contribution for their common benefit either by acquiring additional customers or by adding appreciably to the goodwill of the business, it would seem manifestly unjust to permit the employee to pirate the employer's business by raiding the customer list on his own behalf or on behalf of some third person.

At the other extreme, if an employee has built up patronage either on a specific milk, tea, ice, laundry, or bakery route, or among geographically unrelated prospects, he may share with the employer the

right to solicit and enjoy the fruits of his labors after the termination of his employment. In either instance both employer and employee are governed by principles of equity and fair play as a prerequisite to competing openly for their customers' business.

In support of plaintiff's claim that it has a proprietory interest in the names and addresses of the customers defendant Wolf served, it cites, as controlling, three cases. Colonial Laundries, Inc. v. Henry, 48 R. I. 332, 138 A. 47, 54 A. L. R. 343, decided in 1927, held that a list of route customers, built up by the labor and expense of a laundry, is confidential information which cannot be exploited by the employee after his job terminates. In that case the court observed that the knowledge of the customer list came to the employee only from the employer. It stated that the identity of the patrons was nonetheless confidential (48 R. I. 337, 138 A. 49) "because an energetic spy might have acquired the same information." The court distinguished the protection afforded an employer in milk, ice, laundry, and tea routes from the situation where a traveling salesman calls on customers whose identity and location could easily be determined by reference to a trade journal or index. This case and others base their reasoning on the likelihood of route customers continuing their patronage with the same distributor, absent interference, in contrast to customers whose special needs require initiative and resourcefulness on the part of the salesman in completing individual sales transactions.

Plaintiff also relies on Town & Country House & Home Service v. Newbery, 3 N. Y. (2d) 554, 170 N. Y. S. (2d) 328, 147 N. E. (2d) 724, which involved a list of customers who utilized plaintiff's house-cleaning services. Unlike the route cases, these customers were not geographically integrated, and each had his special problems and required his particular kind of service. The New York court held that a salesman after terminating his employment may not solicit patrons whose trade and patronage have been secured by years of business effort, by advertising and the expenditure of time and money, and by enterprise and foresight which have built up goodwill in the business. The court pointed out (3 N. Y. [2d] 560, 170 N. Y. S. [2d] 333, 147 N. E. [2d] 727):

"\* \* .\* It would be different if these customers had been equally available to appellants and respondent, but, as has been related, these customers had been screened by respondent at considerable effort and expense, without which their receptivity and willingness to do business with this kind of a service organization could not be known."

The court held that the employer was entitled to enjoin the solicitation of its former customers, and to damages for loss of profits.

The third decision cited by plaintiff is United Board & Carton Corp. v. Britting, 61 N. J. Super. 340, 160 A. (2d) 660, affirming 63 N. J. Super. 517, 164 A. (2d) 824. In that case the former employees of plaintiff were guilty of flagrantly disloyal and dishonorable competition with their employer during the period of their employment. The trial court noted (63 N. J. Super. 531, 164 A. [2d] 832):

"While charged by law and common decency to advance the employer's welfare, so long as they were being paid by it for their services, they conspired and acted treacherously to destroy the plaintiff's business and to seize it for themselves and their own competitive corporation."

The appellate court affirmed a decree in so far as it enjoined defendants from doing business with customers to whom they sold while working for the plaintiff. This was not a "route" case but really a conspiracy to destroy the employer's business and the relief granted was manifestly just.

There are a number of decisions in New Jersey, Pennsylvania, California, and New York supporting plaintiff's position, including Abalene Exterminating Co. v. Oser, 125 N. J. Eq. 329, 5 A. (2d) 738, which involved an exterminating business; American Ice Co. v. Royal Petroleum Corp. (3 Cir.) 261 F. (2d) 365, a fuel oil case applying Pennsylvania law; Morgan's Home Equipment Corp. v. Martucci, 390 Pa. 618, 136 A. (2d) 838, a door-to-door route case involving the sale of household articles. In a nonroute case, the Pennsylvania court in refusing to enjoin a former employee from competing observed (Spring Steels, Inc. v. Molloy, 400 Pa. 354, 363, 162 A. [2d] 370, 375):

"* * * It is not a phenomenal thing in American business life to see an employee, after a long period of service, leave his employment and start a business of his own or in association with others. And it is inevitable in such a situation, where the former employee has dealt with customers on a personal basis that some of those customers will want to continue to deal with him in his new association. This is so natural, logical and part of human fellowship, that an employer who fears this kind of future competition must protect himself by a preventive contract with his employee, unless, of course, there develops a confidential relationship which of itself speaks for non-disclosure and non-competition in the event the employer and employee separate. There is nothing of that in this case."

California Intelligence Bureau v. Cunningham, 83 Cal. App. (2d) 197, 188 P. (2d) 303, and Reid v. Mass Co. Inc. 155 Cal. App. (2d) 293, 318 P. (2d) 54, discuss the distinction between route cases and other forms of solicitation and the rules in determining what is unfair competition.[1]

The defendants cite cases in California, Maryland, and Minnesota as controlling. Fulton Grand Laundry Co. v. Johnson, 140 Md. 359, 117 A. 753, 23 A. L. R. 420, held that the identity of laundry customers was not a trade secret entitling plaintiff to equitable protection. The Maryland court reserved decision with respect to a list fraudulently or surreptitiously obtained or where the names of customers were not easily obtainable. It stated (140 Md. 362, 117 A. 754, 23 A. L. R. 422):

---

[1]See, also, Hays, *The California Law of Unfair Competition Takes a Turn—Against the Employer,* 41 Calif. L. Rev. 38; J. C. Taylor Maid Service, Inc. v. Maids Unlimited, Inc. 26 Misc. (2d) 273, 204 N. Y. S. (2d) 281, where solicitation by former employees in a household service business was not enjoined; Cupid Diaper Service v. Adelman, 27 Misc. (2d) 1095, 211 N. Y. S. (2d) 813, where a diaper service man was enjoined; Bates Chevrolet Corp. v. Haven Chevrolet, Inc. 13 App. Div. (2d) 27, 213 N. Y. S. (2d) 577, which enjoined an automobile salesman; Carpenter & Hughes v. De Joseph, 27 Misc. (2d) 1003, 13 App. Div. (2d) 611, 213 N. Y. S. (2d) 856, 860, which enjoined a former salesman of an ophthalmic dispenser from soliciting business of doctors.

"* * * we are not willing to hold that in any ordinary business an employee, on going into business for himself or into the employ of another, should be enjoined from seeking to do business with friends he has made in the course of a previous employment, merely because he became acquainted with them while so engaged and as a result of such previous employment. Under such a rule, a traveling salesman, every time he changed employers, if in a like business, would be compelled to give up all the friends and business acquaintances made during the previous employment. Such a rule would tend to destroy the freedom of employees, and to reduce them to a condition of industrial servitude."

The court observed that the employer could have protected himself with a restrictive covenant but chose not to do so.

The California case relied on by defendant, Continental Car-Na-Var Corp. v. Moseley, 24 Cal. (2d) 104, 148 P. (2d) 9, was not a route case, and the court pointed out that unlike the sales route situation, a salesman in a commercial field has no assurance of an order unless he can satisfy the customer his merchandise is better, cheaper, or more salable than that of his competitor. In the latter situation, the court stated, each sale is a distinct transaction, not necessarily implying that another will follow.

Finally, defendant relies on Boone v. Krieg, 156 Minn. 83, 194 N. W. 92, which we hold is decisive of the issues here involved. In the Boone case the employer was in the business of reproducing and addressing letters and advertising material. Defendant worked for 8 years as a solicitor in the business and, after giving 8 days' notice, went into active competition with plaintiff and solicited former customers. Our court refused to enjoin such solicitation. We held that there was no peculiarly confidential relationship, no trade secret,[2] no fraud, and no restrictive covenant. We recognized that the solicitation of former customers might seem unfair and unjust, but we held that the employer had no exclusive right to the continued patronage of her customers, and

---

[2] 1 Nims, Unfair Competition and Trademarks, § 157; 2 Callmann, Unfair Competition and Trademarks, § 55.2(c)(2).

the employee did have a right to better himself in a new business, and in so doing to solicit his former employer's patrons. We expressly reserved decision as to route cases where the employee has copied lists of his customers. In so doing we cited a Michigan case and a California case which came to conflicting conclusions. Empire Steam Laundry v. Lozier, 165 Cal. 95, 130 P. 1180, 44 L.R.A. (N.S.) 1159, was decided in favor of the employer where there was an express contract containing a restrictive covenant, although the court held it would have come to the same conclusion even without the covenant. Grand Union Tea Co. v. Dodds, 164 Mich. 50, 128 N. W. 1090, 31 L. R. A. (N.S.) 260, while it affirmed a decree awarding damages against a former employee found guilty of unfair competition in withholding orders taken during the last week of his employment, in preventing his employer from placing new salesmen on the route, and in concealing from the employer the names of his customers, refused to enjoin solicitation by reason of a statute then in existence.[3]

As we have indicated, we are not persuaded that the identity and location of customers, whose patronage has been secured by the joint efforts of an employer and a route employee, constitute either a trade secret, confidential information, or a property right which requires equitable protection. In the absence of a restrictive covenant, and subject to the principles of unfair competition, we therefore hold that it was not error to deny plaintiff's motion for a temporary injunction in so far as it sought to enjoin the defendants from doing business with

---

[3]Following are some of the decisions which have permitted the solicitation of customers by former employees: DiAngeles v. Scauzillo, 287 Mass. 291, 191 N. E. 426, 93 A. L. R. 1318, a bakery route; Woolley's Laundry, Inc. v. Silva, 304 Mass. 383, 23 N. E. (2d) 899, 126 A. L. R. 752, a laundry route; Curry v. Marquart, 133 Ohio St. 77, 11 N. E. (2d) 868, a milk route; Haut v. Rossbach, 128 N. J. Eq. 77, 15 A. (2d) 227, where box lunches were sold to factory workers; National School Studios, Inc. v. Superior School Photo Serv. 40 Wash. (2d) 263, 242 P. (2d) 756, involving photographs of school children; Mathews Paint Co. v. Seaside Paint & Lacquer Co. 148 Cal. App. (2d) 168, 306 P. (2d) 113, a paint business; American Alloy Steel Corp. v. Ross, 149 Cal. App. (2d) 215, 308 P. (2d) 494, steel products; Renpak, Inc. v. Oppenheimer (Fla. App.) 104 So. (2d) 642, hotel supplies. See, Annotations, 23 A. L. R. 427, 126 A. L. R. 758.

*any* of the plaintiff's customers who were located on routes defendant Wolf was servicing at the time he quit his job.

■ The circumstances surrounding the termination of defendant Wolf's employment and his solicitation of former customers constitute fact questions for determination in the trial court. However, the defendants in their affidavits admit that prior to April 3, 1961, defendant Wolf discussed his proposed change with no more than twelve of plaintiff's customers and that on April 3 and 4, while still employed by plaintiff, he advised approximately 50 percent of the customers on whom he called that he would later in the week solicit their business on his own behalf as a distributor of the products of Maple Island. In addition, defendant Wolf admitted that he circulated no more than six of the printed announcements. This, in our opinion, constituted a solicitation of business inconsistent with the loyalty which he owed his employer.

Defendants claim that the action taken by defendant Wolf was merely in preparation for a change in employment and was legally permissible. While it is true that an employee may take steps to insure continuity in his livelihood in anticipation of resigning his position, he cannot feather his own nest at the expense of his employer while he is still on the payroll. United Board & Carton Corp. v. Britting, 63 N. J. Super. 517, 164 A. (2d) 824, *supra.* Clearly an employee is not advancing the interests of his employer when he suggests that customers can do as well or better by discontinuing their present patronage and transferring their business elsewhere in the immediate future. Restatement, Agency, § 393, states:

"Unless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency."

*Comment e* provides:

"* * * Thus, before the close of his employment, he may purchase a rival business and upon the termination of the agency immediately compete with his former employer. He may not, however, before the termination of his employment, solicit customers for such rival business, nor may he do other similar acts in direct competition with the employer's business."

Other cases and comments on the question of where the line is drawn between preparation for a change in employment and outright disloyalty to the employer are Ritterpusch v. Lithographic Plate Service, Inc. 208 Md. 592, 119 A. (2d) 392; Duane Jones Co. Inc. v. Burke, 306 N. Y. 172, 117 N. E. (2d) 237; 54 Col. L. Rev. 994; 38 Minn. L. Rev. 661; 22 U. of Chi. L. Rev. 278; 39 Iowa L. Rev. 185; Southern Cal. Disinfecting Co. v. Lomkin, 183 Cal. App. (2d) 431, 7 Cal. Rptr. 43; Keiser v. Walsh, 73 App. D. C. 167, 118 F. (2d) 13. An English case which seems on all fours is Wessex Dairies Ltd. v. Smith [1935] 2 K. B. 80. There the court found that the defendant milkman violated his obligation of loyalty to his employer by soliciting patronage for himself on the last day of his rounds, and awarded the employer damages. The court stated, among other things (2 K. B. 89):

"In this case the question is whether the defendant acted with fidelity when, on the Saturday afternoon in question and perhaps on the previous days of the week, in going his round he informed the customers that he would cease on Saturday to be in the employment of the plaintiffs, that he was going to set up business for himself, and would be in a position to supply them with milk. He was plainly soliciting their custom as from Saturday evening. In my opinion that was as deliberate as it was a successful canvassing at a time when the defendant was under an obligation to serve the plaintiffs with fidelity. I am of opinion therefore that he committed a breach of his implied contract by acting as he did before the termination of his employment."

While we here hold that the identity and location of plaintiff's customers did not constitute confidential information which prevented defendant Wolf from soliciting former customers, we are nonetheless of the opinion that the plaintiff was entitled to such relief as would mitigate the consequences of defendants' unfair competition. It was not only Wolf's duty to refrain from soliciting any customers on his own behalf prior to the termination of his employment, but he was obliged to give plaintiff sufficient notice of his intention to quit so that his employer could train a new man to continue the route and thus be in a position to compete openly and fairly for existing patrons. By lulling it into a belief that he had reconsidered his intention to quit, Wolf de-

prived plaintiff of an opportunity to compete with him on even terms. This we hold was unfair competition, and the trial court should have determined what customers were thereby affected and should have enjoined defendants from soliciting or doing business with such customers until plaintiff had an adequate opportunity to do its own soliciting. However, we believe that the restraining order which we entered when this appeal was taken has accomplished the same purpose, and that a temporary injunction is therefore no longer necessary.

The order of this court dated April 14, 1961, is vacated, and the order of the District Court of Washington County denying plaintiff's motion for a temporary injunction is affirmed.

### UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On December 8, 1961, the following opinion was filed:

KNUTSON, JUSTICE.

Respondents appeal from the clerk's taxation of costs and disbursements.

The right to tax costs and disbursements in this court is controlled by Minn. St. 607.01 and Supreme Court Rule XV (222 Minn. xxxvii). Section 607.01 provides:

"Costs in the supreme court may be allowed, in the discretion of the court, as follows:

"(1) To the prevailing party, upon a judgment in his favor on the merits, not exceeding $25;

\* \* \* \* \*

"In all cases the prevailing party shall be allowed his disbursements necessarily paid or incurred."

Rule XV provides that unless otherwise ordered the prevailing party shall recover costs in the amount provided by the above statute.

A prevailing party has been defined as one who procures a reversal or modification of the order or judgment from which the appeal is taken. Sanborn v. Webster, 2 Minn. 277 (323); Henderson v. Northwest Airlines, Inc. 231 Minn. 503, 511, 43 N. W. (2d) 786, 792.

This appeal was from an order of the trial court denying appellant's motion for a temporary injunction. We affirmed without any modifica-

tion. We did grant a temporary restraining order pending determination of the appeal. Appellant now contends that the restraining order so issued accomplished the same purpose as a reversal of the trial court's order would have accomplished if we had reversed. We cannot agree. A restraining order is frequently issued pending determination of an appeal by a single member of this court in order to maintain the status quo until the case can be decided on its merits. Such order is in no sense a decision of the appeal by this court. A decision requires a majority of those participating in the appeal. An appellant who fails to procure a reversal or modification of the order or judgment appealed from by a decision of the court cannot be considered a prevailing party entitled to tax costs and disbursements. It may be true that there is some dicta in the court's opinion in this case which would indicate that we felt that the trial court was partially incorrect, but our decision is an affirmance without modification. Under these circumstances, respondents are the prevailing parties. The taxation of costs by the clerk is reversed.

Reversed.

OTIS, JUSTICE (dissenting).
I dissent.