*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0384**

Farmers Insurance Exchange, et al.,
Respondents,

vs.

Erik Hjelle,
Appellant,

The Insurance Shop Services, LLC,
Defendant.

**Filed January 26, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CV-11-6258

Kelly A. Putney, Bassford Remele, P.A., Minneapolis, Minnesota; and

Melvin D. Weinstein (pro hac vice), Kegler, Brown, Hill & Ritter Co., L.P.A., Columbus, Ohio (for respondents)

Diana Longrie, Maplewood, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Ross, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's partial summary judgment to respondent on the issue of appellant's liability for breach of contract. We affirm.

## FACTS

Appellant Erik Hjelle entered into an agent appointment agreement with respondents Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, Farmers New World Life Insurance Company, and Illinois Farmers Insurance Company (respondents) in April 1997. Hjelle formed The Insurance Shop Services LLC in 2007 or 2008 and thereafter switched multiple policyholders of respondents to other insurance carriers. In September 2010, Hjelle gave respondents notice of termination of his agent agreement, effective December 2010. Following termination, the agent agreement obligated respondents to pay Hjelle a "Contract Value," calculated to be a total of $85,545.45, payable in at least three installments.

In November 2010, through an office assistant, Hjelle used confidential policyholder information from respondents' password-protected computer database—respondents' "Agency Dashboard"—to create mailing labels for letters that Hjelle sent to

policyholders. One version of the letter was printed on respondents' letterhead, and a second, virtually identical version, was printed on The Insurance Shop letterhead.[1]

Following termination of his agent agreement in December 2010, Hjelle accepted business from respondents' policyholders whom he had serviced as respondents' agent. Respondents warned Hjelle by letter that he had violated the agent agreement and that installment payments of his contract value were in jeopardy, pending an investigation of his conduct. Although respondents paid Hjelle two contract-value installments in March and June 2011, Hjelle continued to accept business from respondents' policyholders whom he had previously serviced as respondents' agent. Respondents consequently withheld Hjelle's final contract-value installment and commenced suit against Hjelle and The Insurance Shop, alleging, among other things, breach of contract and tortious interference with prospective and existing business and contractual relations. Hjelle and The Insurance Shop answered and counterclaimed for, among other things, bad faith litigation, abuse of process, and tortious interference with existing business and contractual relations.

The district court granted respondents a temporary injunction to prevent Hjelle and The Insurance Shop from continuing to solicit, accept, or service respondents' policyholders of record as of March 2011 and from using respondents' confidential

---

[1] Hjelle disputes that he sent any letters on respondents' letterhead, but he admitted during his deposition that he did not see the letters before they were mailed and he answered questions about a letter that was printed on respondents' letterhead.

information until March 2012.[2] The court subsequently granted respondents' motion for partial summary judgment on the issue of Hjelle's liability for breaching the agent agreement prior to its termination by switching respondents' policyholders to other insurance carriers, by using respondents' confidential policyholder information to solicit business of respondents' policyholders for other insurance companies, and by "soliciting, accepting and/or servicing" respondents' policyholders following termination of the agent agreement. The court also granted respondents summary judgment on Hjelle and The Insurance Shop's counterclaims for "bad faith litigation, abuse of process, and tortious interference with contractual relations."

Following a trial on the issues of damages for Hjelle's breach of contract and of liability and damages for The Insurance Shop's tortious interference with contractual relations, a jury returned a special verdict, awarding breach-of-contract damages in the amount of $324,489 and tortious-interference damages in the amount of $171,872. The district court entered judgment on both awards, reducing the breach-of-contract award by the amount of the unpaid final contract-value installment of $28,486.81.

Hjelle appeals from the partial summary judgment on liability for breach of contract.[3]

---

[2] Hjelle and The Insurance Shop appealed the temporary injunction in March 2012. This court dismissed the appeal as moot in October 2012, because the injunction already had expired.

[3] This court dismissed The Insurance Shop from the appeal after respondents challenged The Insurance Shop's status as a party to this appeal because the issues on appeal involve only respondents and Hjelle.

4

**D E C I S I O N**

Hjelle argues that the district court erred by granting partial summary judgment to respondents because (1) genuine issues of material fact exist regarding whether (a) Hjelle switched eligible policyholders of respondents to other carriers and (b) Hjelle's November 2010 letter was a solicitation, and (2) the court erred in its interpretation and application of Minn. Stat. § 72A.20.

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. R. Civ. P. 56.03. "The moving party has the burden of showing an absence of factual issues before summary judgment can be granted." *Anderson v. State, Dep't of Natural Res.*, 693 N.W.2d 181, 191 (Minn. 2005). "[W]hen the moving party makes out a prima facie case, the burden of establishing that the facts raise a genuine issue falls to the opposing party." *Citizens State Bank*, 849 N.W.2d at 62. "To defeat a summary judgment motion, the nonmoving party must do more than rest on averments or denials of the adverse party's pleadings." *Id.* at 61–62 (citing Minn. R. Civ. P. 56.05). "[T]he nonmoving party must present more than evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions." *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364 (Minn. 2009) (quotation omitted). "No genuine issue of material fact exists when the record taken as a whole

5

could not lead a rational trier of fact to find for the nonmoving party." *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008) (quotations omitted).

Appellate courts "review de novo a district court's grant of summary judgment." *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014). Appellate courts "view the evidence in the light most favorable to the party against whom summary judgment was granted to determine whether there are any genuine issues of material fact and whether the district court correctly applied the law." *Id.*

***Hjelle's switching of eligible policyholders of respondents to other insurance carriers***

The agent agreement between Hjelle and respondents provides that the agent will sell insurance to eligible applicants:

> B. The Agent agrees in consideration of the Companies' agreements:
>
> 1. To sell insurance for the Companies and to submit to the Companies every request or application for insurance for the classes and lines underwritten by the Companies and eligible in accordance with their published Rules and Manuals. All business acceptable to the Companies and written by the Agent will be placed with the Companies.

The agent agreement also provides that if an agent switches insurance from respondents to other carriers, the agreement is subject to immediate termination:

> C. This Agreement terminates upon the death of the Agent and may be terminated by either the Agent or the Companies on three (3) months written notice.
>
> If the provisions of this Agreement are breached by either the Agent or the Companies, the Agreement may be terminated by the other party on thirty (30) days written notice. *This Agreement may be terminated immediately* by

6

> mutual consent or *by the Companies for the following reasons:*
>
> . . . .
>
> > 2. Switching insurance from the Companies to another carrier.

(Emphasis added.)

The district court concluded that Hjelle breached the agent agreement by switching eligible policyholders of respondents to other insurance carriers. Paragraph C of the agent agreement clearly prohibited Hjelle from switching respondents' policyholders to other insurance carriers. The district court noted that, as to the eligibility of existing policyholders, "Hjelle submitted no evidence to contradict the evidence submitted by Farmers." Respondents argue that, because this case focuses on existing policyholders of respondents whom Hjelle switched to other insurance carriers, the district court correctly determined that Hjelle "failed to meet his Rule 56.05 burden" to produce evidence of ineligibility. We agree. *See Citizens State Bank*, 849 N.W.2d at 62 ("[W]hen the moving party makes out a prima facie case, the burden of establishing that the facts raise a genuine issue falls to the opposing party.").

Hjelle argues that he presented sufficient evidence to raise a genuine issue of material fact regarding the eligibility of respondents' policyholders whom he switched to other insurance carriers. Hjelle points to his deposition testimony, in which he provided some explanations about why certain of respondents' policyholders became ineligible for respondents' policies. He also argues that his deposition testimony is supplemented with evidence regarding the existence and implementation of underwriting advisories that

7

helped agents determine which policies would qualify with respondents and discouraged agents from writing ineligible policies and with evidence of bonuses that he received for good risk selection. But Hjelle admits in his brief that he testified at his deposition that he has no memory of the reason for various policyholder switches to other carriers. Hjelle therefore did not raise a genuine issue of material fact regarding whether those switches of policyholders to other insurance carriers violated his agent agreement.

We conclude that, based on the record as a whole, no reasonable person could conclude that Hjelle did not switch eligible policyholders of respondents to other insurance carriers. The district court therefore did not err by granting summary judgment to respondents on their breach-of-contract claim.

### Hjelle's solicitation letter to respondents' existing policyholders

The letter that Hjelle sent to existing policyholders of respondents in November 2010 reads:

> Change is the only thing that we can be certain of sometimes and change is coming to your Home Insurance and my Agency. Farmers Insurance has changed its' Home Insurance effective your <u>next renewal</u> to exclude the "Matching of Undamaged Property". This change in your Home policy affects roofing, siding, flooring, etc. when replacement materials do not match existing materials. I have included a copy of the actual endorsement change. *<u>This change in your policy will not be effective until your current Next Generation Home policy renews.</u>*

> For 15 years, my primary obligation to you has been honesty and advocacy. As a result of this change and other factors, I have decided to leave Farmers effective December 3, 2010 and continue my Insurance career as an Independent agent. Having choice with 20+ Insurance

Companies and being able to offer better rates along with comprehensive coverage is very important.

Last June I purchased a new office and want to grow my business by serving clients with a diverse choice of Insurance Companies. For the last 4 years, I have been an Independent agent licensed in Wisconsin and have enjoyed being an Insurance Broker. After December 3, I will be changing my selling agreements with those Independent companies to include Minnesota and will cancel my selling agreement with Farmers. As a consumer, you have a right to purchase insurance from any Company and any agent you choose.

I want to THANK YOU for your business over these many years. I can never adequately express my appreciation and gratitude for such loyalty, especially when insurance is available from so many sources. Thank you for that privilege!

The letter concluded with Hjelle's contact information, including his phone number, e-mail address, the website for The Insurance Shop, and Hjelle's invitation to contact him with "questions at any time."

The district court determined on summary judgment that "Hjelle's letter is a business solicitation as a matter of law," that Hjelle used the letter to the detriment of respondents, and that Hjelle breached the agent agreement by sending the letter to respondents' policyholders using information found on the Agency Dashboard. Hjelle argues that the court erred by concluding that his letter is a business solicitation as a matter of law. Citing *Rehabilitation Specialists, Inc. v. Koering*, 404 N.W.2d 301 (Minn. App. 1987), Hjelle argues that "the District Court had sufficient evidence to either determine that the November 2010 letter was not a solicitation letter or that a genuine issue of material fact existed as to if it was permissible preparation." In *Koering*, this

court stated that "[a]n employee has the right, . . . while still employed, to prepare to enter into competition with her employer" and that "[t]here is no precise line between acts by an employee which constitute prohibited solicitation and acts which constitute permissible preparation." *Id.* at 304−05 (quotations omitted).

Respondents argue that Hjelle waived his permissible-preparation argument because he did not present it in district court. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (quotation omitted)). Although we reject respondents' waiver argument because Hjelle argued to the district court that his letter was not a solicitation, we conclude that Hjelle's permissible-preparation argument is unpersuasive.

A "solicitation" includes "[a]n attempt or effort to gain business." *Black's Law Dictionary* 1520 (9th ed. 2009). Hjelle's reliance on *Koering* and *Sanitary Farm Dairies v. Wolf*, 261 Minn. 166, 112 N.W.2d 42 (1961), as support for his argument that his letter was permissible preparation rather than prohibited solicitation is misplaced. Neither case involves a breach-of-contract claim; both cases involve claims of breach of the duty of loyalty only. *See Koering*, 404 N.W.2d at 304; *Wolf*, 261 Minn. at 168, 112 N.W.2d at 44.

Hjelle does not dispute that his office assistant used policyholder information, including names, addresses, renewal dates, and other policy information, from respondents' Agency Dashboard to create mailing labels for his letter. This constituted a violation of the agent agreement, which provides:

10

I. The Agent acknowledges that all manuals, lists and records of any kind (including information pertaining to policyholders and expirations) are the confidential property of the Companies and agrees they shall not be used or divulged in any way detrimental to the Companies . . . .

We agree with the district court that the letter is a "classic example of a business solicitation." No reasonable trier of fact could find that Hjelle's letter was not an attempt or effort to gain business. We therefore conclude that the district court did not err by determining that Hjelle's letter to policyholders of respondents constituted a solicitation and that Hjelle violated his agent agreement. Hjelle breached the agent agreement by using confidential information from the Agency Dashboard to mail a solicitation to respondents' existing policyholders to respondents' detriment.

### *Interpretation and application of Minn. Stat. § 72A.20*

The agent agreement includes the following noncompete clause:

H. The Agent agrees to . . . accept tender of Contract Value and further agrees that for a period of one year following the date of payment or tender of payment the Agent will neither directly or indirectly solicit, accept, or service the insurance business of any policyholder of record in the agencies of this district as of the date of payment or tender of payment.

The district court concluded that Hjelle breached the noncompete clause by accepting and servicing business from respondents' policyholders after he received the first contract-value installment. Hjelle argues that the noncompete clause is unenforceable because Minnesota Statutes section 72A.20, subdivision 14, "as a matter of law supersedes the operation of a non-compete clause in an agent appointment agreement." That statute provides:

> An insurance agent refusing to supply a requested application form for homeowner's insurance with any insurer whom the agent represents or refusing to transmit forthwith any completed application from the insurer, shall constitute an unfair method of competition and an unfair and deceptive act or practice.

Minn. Stat. § 72A.20, subd. 14 (2014).[4]

"[A] contract violating law or public policy is void." *Scheeler v. Sartell Water Controls, Inc.*, 730 N.W.2d 285, 288 (Minn. App. 2007). Hjelle cites *Grand Union Tea Co. v. Dodds*, 128 N.W. 1090 (Mich. 1910), *Grand Union Tea Co. v. Lewitsky*, 116 N.W. 1090 (Mich. 1908), and *Wolf*, 261 Minn. 166, 112 N.W.2d 42, to support his argument that section 72A.20 supersedes the noncompete clause. As out-of-state cases, neither *Dodds* nor *Lewitsky* is binding on this court. *See Eng'g & Const. Innovations, Inc. v. L.H. Bolduc Co.*, 825 N.W.2d 695, 707 n.8 (Minn. 2013) (citing foreign caselaw and stating that "[t]hese decisions are not binding on us"). Moreover, those refer to a statute that expressly prohibited agreements not to engage in business or trade, such as noncompete agreements. *See Dodds*, 128 N.W. at 1091 (referencing Michigan statute discussed in *Lewitsky*); *Lewitsky*, 116 N.W. at 1093 (quoting Michigan statute that provided that "'[a]ll agreements and contracts by which any person . . . promises or agrees not to engage in any . . . trade, profession or business, whether reasonable or unreasonable, . . . are hereby declared to be against public policy and illegal and void'"). And *Wolf* does not involve a noncompete clause or a statute prohibiting noncompete agreements. *See* 261

---

[4] We apply the most recent version of section 72A.20 because the statute has not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. Of Comm'rs*, 671 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case").

Minn. at 174, 112 N.W.2d at 48. None of the cases is instructive, and Hjelle's reliance upon the cases is misplaced.

Respondents argue that section 72A.20 is an anti-redlining statute and does not prohibit Hjelle from complying with the noncompete clause.[5] "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). "If the Legislature's intent is clear from the unambiguous language of the statute, we apply the statute according to its plain meaning." *Id.* at 716–17. "But if a statute is susceptible to more than one reasonable interpretation, the statute is ambiguous, and we will consider other factors to ascertain the Legislature's intent." *Id.* at 717. We agree with respondents that section 72A.20 is not ambiguous and that the plain meaning of the statute does not prohibit enforcement of valid noncompete clauses in agent agreements.

Section 72A.20 contains numerous provisions identifying conduct that constitutes unfair and deceptive trade practices. Our supreme court has referred to it as "the anti-redlining statute." *See Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 309 (Minn. 2006) ("More specific prohibitions against discrimination are contained in Minn. Stat. § 72A.20 (2004), the anti-redlining statute.").

Read in this context, subdivision 14 clearly is meant to prohibit insurance agents from refusing to supply or transmit insurance applications as a method of redlining. *See Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000) ("While statutory

---

[5] "[R]edlining" means "[c]redit discrimination . . . by an institution that refuses to provide loans or insurance on properties in areas that are considered to be poor financial risks or to the people who live in those areas." *Black's Law Dictionary* 1391 (9th ed. 2009).

construction focuses on the language of the provision at issue, it is sometimes necessary to analyze that provision in the context of the surrounding sections."). Section 72A.20, subdivision 14, does not prohibit an insurance agent from complying with a valid and enforceable noncompete clause.

**Affirmed.**